Pearson, C. J.
 

 The general scope of the bill is to subject the land set out in the pleadings to the payment of the
 
 *297
 
 notes given to the plaintiff McRae, by the defendants Thomas and Charles Skinner, and the plaintiff Lewis, on the ground that the instrument executed to McRea by Thomas and Charles Skinner and Lewis, dated 14th June
 
 1859,
 
 — is a
 
 mortgage
 
 or “ an instrument in the nature of a mortgage,” and has the legal effect of creating a lien on the land for the payment of the debt secured by the notes. The bill in the second place, alleges the existence of a co-partnership between Thomas and Charles Skinner and Lewis in respect to the land, that the debt was a copartnership debt, and seeks to set up an equity to have it paid by the laud, under and by force of tlio equity of Lewis as one of the partners in reference to the individual debts due by the defendants Thomas and Charles Skinner, to the other defendants. The difficulty in the case grows out of the nondescript character of the instrument dated Juno 14th 1859. It is not a mortgage, or “an instrument in the nature of a mortgage,” that is, as understood in the books, a conveyance to a third person in trust to secure a debt, nor can it in any way have the legal effect to create a lien. The most that it can amount to is, a promise thatJVIcRae shall have a lien on this land to secure his debt. When the legal estate is transferred, the party passing it may create a use by simple declaration, or he may reserve a power to create a use afterwards by declaration, or he may give to a third person a power to declare the uses. But if the legal estate is not transferred a use can only be created by a bargain based on a valuable consideration, which is said to raise the use, or by covenant to stand seized, based on a good consideration, to wit, natural affection. This is familiar learning. See Saunders on “ Uses and Trusts.”
 

 The same principle applies to trusts, to wit, uses not coming within the operation of the Stat. 27, Hen. VIII. For this reason it is held, that a power of appointment, or a pow
 
 *298
 
 er of sale, cannot be created by a deed of bargain and sale, or a covenant to stand seized. These powers are in effect a mere delegation to a third person of the right to raise a use or trust by declaration, and the party cannot himself create a use or trust by mere declaration, unless he transfers the legal estate. This doctrine is discussed and explained in
 
 Smith
 
 v.
 
 Smith,
 
 1 Jon. 135.
 

 The instrument under discussion does not transfer the legal title. A lien is a trust, consequently a lien cannot be created by a mere declaration, unless the legal estate be transferred. So this instrument cannot have the effect of creating a lien or trust, although it would seem to have been the intention of the parties to do so. It is a
 
 nalel
 
 declaration of a trust, and the bill, so far as it seeks to enforce a subsisting lion, must fail — for under the most benignant application of the rule,
 
 u utres niagis valeat quam pereat,’
 
 the instrument cannot be allowed to have the effect of creating a trust, without a violation of the settled principles of equity jurisdiction.
 

 The point taken on the argument, that although the vendor’s lien for the purchase money has not been adopted by our courts, yet that has reference to an implied lien, and does not exclude an
 
 express
 
 lien — is not presented by the facts; for the deed of McRae is an absolute one, and does not contain a declaration of any trust in favor of the grant- or to secure the purchase money, which we suppose might have been done, and might have amounted to an express lien. But it is useless to speculate on the matter, as there is no such trust declared, and no express reservation of a lien.
 

 But it is said, suppose the instrument does not create a lien, it may, under the doctrine of specific performance, be carried into effect as an
 
 agreement to give a lien.
 
 There are two objections to this position; in the first place the bill is
 
 *299
 
 not framed with that view. It does not allege the instrument to be an agreement to give a lien, and the court must confine itself to the allegations in the pleadings — otherwise we are “at sea.” But, suppose this difficulty out of the way, a court of equity never interferes to compel the specific performance of an agreement unless it be supported by a valuable consideration. Here there is no consideration; it is
 
 nudum
 
 pactum, for McRae had executed title to the land and accepted the notes of the purchasers. The debt therefore was a matter personal, and although it originated as the price of the land, it was no longer connected with it, and stood on the same footing with any other debt.
 
 Miller
 
 v.
 
 Miller ante
 
 85. In other words the consideration wae past. There is no new consideration alleged, no abatement of the debt, no extension of the time of payment. And the instrument seems to have been executed simply because, to use the language of the parties, “whereas it is desirable by the said Skinner and Lewis to secure to the said McRae, the payment of the several notes,” &c.
 

 On the footing of the copartnership entered into by Thomas and Charles Skinner and Lewis in respect to the purchase of this land, whereby the debt became a copartnership debt, the plaintiff McRae might have worked out an equity, through the plaintiff Lewis, to have this debt satisfied by the land as a partnership fund, in preference to the individual creditors of the parties, but for the fact that by the deed of the 26th of April 1860 the copartnership dissolved and Lewis withdrew from the firm, assigned all the partnership fund over to Charles Skinner and Thomas Skinner, and agreed to submit to a loss of $500 in consideration of their covenant to indemnify him against the debts and liabilities of the firm, and to secure the performance of this covenant reserved to himself his
 
 “individual share of one-third of the tract of land."
 
 With this security he was
 
 *300
 
 content, and is at liberty to make the most of it.
 
 Potts
 
 v.
 
 Blackwell,
 
 3 Jon. Eq., 449; 4
 
 ib.,
 
 58. By a bill properly framed he may enforce the specific performance of this covenant for indemnity, and may obtain a decree that Thomas and Charles Skinner pay off and satisfy the debts of the firm, and that his individual one-third of the land shall be applied to that purpose; but beyond this one-third the decree will be merely personal against Thomas and Charles Skinner, and cannot be made to attach to the other
 
 Uvo~
 
 thirds; for he has given over these two-thirds to Thomas and Charles Skinner, relying on their personal obligations, and on his individual one-third of the land as a security; of course therefore thejr were left at liberty to dispose of the two-thirds, and could dispose of them either to pay off the liabilities of the late firm, or to pay their individual debts as they should see proper. In other words Lewis retained no right to control the disposition of these two-thirds, and the consideration moving him to this arrangement was the personal understanding of Charles and Thomas Skinner to save him harmless from the debts of the firm.
 

 The bill will be dismissed with costs.
 

 Per Curiam
 

 Bill dismissed.